## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | **MDL No.: 1871**<br>**Case No.: 07-md-01871** |

Alfred Albrecht,
Alfred Allen,
Shirley Benjamin,
Billy Bob Bryd,
Nancy Campbell,
Mary Carl,
Stanley Carpenter,
Lillian Cox,
Lionel Cox,
James Crittenden,
Mango Dickerson,
Joseph Fucci,
Connie Hanna,
Joyce Hatcher,
Gerald Heffington,
Edward Hines,
Elizabeth Ingram,
Dorothy James,
Lola Mae Johnson,
George Jones,
Shirley Kearley,
Walter Kelley,
Rose Kelly,
Willard Kirksey,
Melvyn Klein,
Ross Knight,
Donald Lairsey,
Frederick Lambert,
Jim Larson,
Wilbert Malden,
Thomas Maloney,
Glenda McCalvin on behalf of the
Estate of Walter McCalvin, deceased,
Fletcher McCullough,
Curtis Miller,
Ruthie Netterville,

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

**CIVIL ACTION NO.:**

| | |
|---|---|
| Richard Nix, | ) |
| Brenton Owens, | ) |
| Minnie Payne, | ) |
| Ellisa Pope, | ) |
| Voice Posey, | ) |
| Jerry Potter, | ) |
| Gwen Purify on behalf of the Estate of | ) |
| Everette Purify, deceased, | ) |
| James Pursley, | ) |
| Heather Pusey on behalf of the Estate of | ) |
| Violet Pusey, deceased, | ) |
| Rickey Reed, | ) |
| Pauline Scott on behalf of the Estate of | ) |
| Eva Rodgers, deceased, | ) |
| Corrine Strickland on behalf of the Estate | ) |
| of Alfred Strickland, deceased, | ) |
| Jerry Summers, | ) |
| Joan Teresi on behalf of the Estate of | ) |
| Mariano Teresi, deceased, | ) |
| Walter Thomas, | ) |
| Betty Todd, | ) |
| Valen Vaitkus, | ) |
| Beatrice Yarbrough, | ) |
| James Yohn, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| GLAXOSMITHKLINE, LLC, a Pennsylvania | ) |
| limited liability corporation, formerly known as | ) |
| SmithKline Beecham Corporation and SmithKline | ) |
| Beecham Corporation d/b/a GlaxoSmithKline, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, by and through their attorneys, The Maher Law Firm, a Professional Association, and Wagstaff & Cartmell, LLC, on behalf of themselves individually, upon information and belief,

at all times hereinafter mentioned, allege as follows:

## PRIMARY ALLEGATIONS

1.      Defendant, GLAXOSMITHKLINE, LLC, a Pennsylvania limited liability corporation, formerly known as SmithKline Beecham Corporation and SmithKline Beecham Corporation d/b/a GlaxoSmithKline, produced, manufactured, distributed, and sold Avandia which Plaintiffs, and each of them, ingested. The Avandia that Defendant sold to Plaintiffs, was defective, thereby violating statutory and common law and causing Plaintiffs, damages and/or entitling them to relief.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to each Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendant is incorporated and has its principal place of business in states other than the states in which the named Plaintiffs reside.

3.      The filing of this Multi-Party Complaint is authorized by this Court. In paragraph 2 of Pretrial Order No. 4, dated May 14, 2008, and entitled, "Memorandum & Order Regarding Consolidated Filing By Plaintiffs", this Court authorized the filing of multi-party complaints which include multiple, unrelated personal injury plaintiffs who each are domiciled in the same federal judicial district. A copy of Pretrial Order No. 4 is attached hereto as Exhibit "A". Although on July 21, 2008, this Court approved a stipulation entered into between the Plaintiffs' Steering Committee and Defendant that suspended the allowance of filing multi-party complaints given the fact that the parties had agreed on the form of a Tolling Agreement, the Stipulation also provided that, "[i]f, in the future, GSK were to mass-terminate the tolling agreements, paragraph 2 of PTO-4 will

automatically be reinstated." A copy of the "Stipulation and Order Regarding Pretrial Order No. 4"

is attached hereto as Exhibit "B". On April 20, 2009, this Court approved and authorized the use

of the form of the Tolling Agreement as agreed upon by the parties. A copy of Pretrial Order No.

55 is attached hereto as Exhibit "C", and a copy of the approved form of the Tolling Agreement is

attached hereto as Exhibit "D"

4.      As of June 2, 2010, the attorneys for Plaintiffs herein, The Maher Law Firm, had

entered into properly executed and accepted Tolling Agreements with Defendant with regard to 391

individuals who suffered injury as a result of their Avandia use. As of that date, The Maher Law

Firm was in full compliance with the terms and requirements contained therein. As of that date, 154

completed Fact Sheets had been submitted to Defendant, and the remainder were in the process of

being completed. However, on June 3, 2010 Defendant suddenly, inexplicably and unilaterally

advised Plaintiffs' counsel that it was mass-terminating all 391 Tolling Agreements. A copy of the

mass-termination letter from Pepper Hamilton, counsel for Defendant is attached hereto as Exhibit

"E".

5.      This mass-termination of the Tolling Agreements by Defendant has triggered

reinstatement of paragraph 2 of PTO No. 4 (Exhibit "B"), which, combined with Paragraph 12 of

the Tolling Agreement (Exhibit "D"), allows the filing of multi-party complaints directly into the

MDL No. 1871.

6.      As stated above, this Court has provided for the filing of the instant action directly

into this Court and, specifically, into MDL No. 1871. Plaintiffs state that but for this allowance,

Plaintiffs would have filed in the United States District Court for the Northern District of Florida.

Therefore, Plaintiffs respectfully request that at the time of transfer of this action back to the trial

court for further proceedings this case be transferred to the Northern District of Florida.

7.     This Court has personal jurisdiction over Defendant consistent with the United States Constitution and MDL No. 1871 as Plaintiffs' claims arise out of Defendant's transaction of business and the commission of tortuous acts within the State of Florida, and by virtue of Defendant's substantial, continuous and systematic contacts with the State of Florida and the Commonwealth of Pennsylvania unrelated to Plaintiffs' claims.

## PARTY PLAINTIFFS

8.     Each individual Plaintiff in this action is a resident and citizen of various counties in the state of Florida, all of which are within the confines of the Northern District of Florida. See 28 USC § 89(b). Each Plaintiff, and/or Plaintiff's decedent, purchased and used Avandia.[1]

9.     As a result of using Defendant's Avandia, Plaintiffs and/or Plaintiffs' decedents, developed, between 1999 and 2010, severe health problems, including, but not limited to, death, myocardial infarction, congestive heart failure, cerebrovascular accident, atherosclerotic heart disease, and various other cardiovascular, cardiopulmonary, renal and other health problems.

## DEFENDANT, GLAXOSMITHKLINE, LLC

10.     Defendant, GLAXOSMITHKLINE, LLC, a Pennsylvania limited liability corporation, formerly known as SmithKline Beecham Corporation and SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("Defendant"). Its principal place of business is located at One Franklin Plaza, Philadelphia, Pennsylvania 19102. At all times relevant herein, Defendant was a pharmaceutical company doing business in the state of Florida, who designed, manufactured,

---

[1]For purposes of judicial economy, each Plaintiff named in the caption was not relisted in the body of this complaint.

labeled, tested, distributed, advertised, marketed, promoted and sold a variety of prescription drugs including those for diabetes mellitus, including Avandia.

## FACTUAL ALLEGATIONS

11.     Defendant manufactures, promotes, distributes, labels, and markets rosiglitazone under the trade name(s) of Avandia® Tablets, Avandamet® Tablets, and Avandaryl® Tablets.

12.     Rosiglitazone is a member of a class of drugs known as Thiazolidinediones (TZDs).

13.     Avandia® was first approved for use in the United States in 1999 for the use in treatment of type II diabetes mellitus, also known as non-insulin-dependent diabetes mellitus ("NIDDM") or adult-onset diabetes.

14.     In 2002, Avandamet®, a single pill combination of Avandia® and metformin, was approved in the United States for use in treatment of type II diabetes mellitus.

15.     In 2005, Avandaryl®, a single pill combination of Avandia® and Amaryl®, likewise was approved in the United States for use in treatment of type II diabetes mellitus.

16.     Type II diabetes is the most common form of diabetes and occurs where the body fails to properly use insulin (insulin resistance), combined with relative insulin deficiency.[2] Insulin, which is made in the pancreas, helps the body's cells use sugar from the bloodstream, which comes from foods and drinks. Sugar is a source of energy for cells.[3] The third type, gestational diabetes, affects about 4% of all pregnant women - about 135,000 cases in the United States each year.[4]

17.     Most people with diabetes have health problems -- or risk factors -- that increase the

_____

[2] http://www.diabetes.org/about-diabetes.jsp

[3] Id.

[4] Id.

risk for heart disease and stroke. More than 65% of people with diabetes die from heart disease or stroke. With diabetes, heart attacks occur earlier in life and often result in death.

18.     Cardiovascular disease (CVD) is the main cause of death in these patients.  Thus, it is important that an antidiabetic agent reduce the risk of cardiovascular injury.

19.     During the past decade, numerous drugs have been introduced for the treatment of type II diabetes that, used in monotherapy or in combination therapy, are supposed to better control the disease in patients and reduce the health complications often associated with diabetes, such as heart attacks, strokes and other cardiovascular complications.

20.     Thiazolidinediones (TZDs) are a novel class of insulin-sensitizing antidiabetic agents. In the USA and Canada, two TZDs are indicated for use in type II diabetes mellitus, rosiglitazone and pioglitazone. A third, troglitazone (Rezulin) has been removed from the market because of an association with significant hepatotoxicity.

21.     At all relevant times, defendant was in the business of designing, licensing, promoting, manufacturing, marketing, selling and distributing pharmaceuticals and other products, including Avandia.

22.     Defendant is licensed to do business and in fact does business by agent in the Commonwealth of Pennsylvania and the State of Florida.  At all relevant times, Defendant designed, developed, licensed, marketed, manufactured, sold and placed in the stream of commerce Avandia, including the Avandia at issue in this lawsuit.

23.     Defendant did this throughout the United States, in this district and in the Commonwealth of Pennsylvania and the State of Florida.

## Plaintiffs' Use of Avandia and Resulting Injuries

24.     Plaintiffs and/or Plaintiffs' decedents, were initially prescribed Avandia in tablet form by a licensed healthcare provider between approximately 1999 and 2010, when Defendant had failed to disclose to patients and their physicians the true dangers of adverse cardiac events caused by ingestion of the drug Avandia.  Plaintiffs and/or Plaintiffs' decedents, used it as prescribed. Avandia was manufactured, sold, distributed and placed in the stream of commerce by Defendant.

25.     At all times relevant herein, Defendants failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public, on notice of the dangers and adverse effects caused by ingesting Avandia including, without limitation to, risk of cardiac events.

26.     Avandia as designed, manufactured, distributed, sold and/or supplied by Defendants, was defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendant's knowledge of lack of cardiovascular safety.

27.     At the time each Plaintiff and/or each Plaintiff's decedents began to use Avandia, s/he did not know, and could not have known, that Avandia was defective and would cause injury and death.

28.     Each Plaintiff and/or each Plaintiff's decedent did not know, and could not have known, that prior to the date s/he used Avandia referred to above, that Defendant was aware and had knowledge that Avandia which it manufactured, marketed, sold and distributed was defective and had the propensity to cause severe injury including death.

29.     Each Plaintiff did not know, nor could s/he have reasonably discovered through the use of reasonable diligence, that Avandia wrongfully caused his/her/decedent's injuries alleged herein and that s/he had a claim against Defendant until less than one year prior to the date of filing

this action.

30.     In fact, Defendant knew as early as 1999 that Avandia was unreasonably dangerous and could cause heart attacks and deaths.

31.     In 1999, Dr. John B. Buse (the immediate past president of medicine and science of the American Diabetes Association), a diabetes expert and head of endocrinology at the University of North Carolina School of Medicine, Chapel Hill, raised concerns about Avandia and heart problems, including the risk of heart attack and death.

32.     Defendant attempted to silence Dr. Buse and further conceal the true nature of Avandia risks by threatening Dr. Buse with a $4 million lawsuit and by characterizing him as a liar[5].

33.     In response to Defendant's pressure, Dr. Buse sent a three-page letter to Dr. Tadataka Yamada, defendant's Chairman of Research and Development. In the letter, Dr. Buse wrote, "I may disagree with [defendant]'s interpretation of that data…I am not for sale … Please call off the dogs. I cannot remain civilized much longer under this kind of heat." Eventually, Dr. Buse signed a clarifying statement with the company to help ease investor concerns.

34.     On March 15, 2000, John Buse, MD wrote a letter to the FDA again raising concerns about a "worrisome trend in cardiovascular deaths and severe adverse events" associated with Avandia:

> I would like you to know exactly what my concerns are regarding rosiglitazone as a clinical scientist and my approach as a clinician. On the basis of the increase in LDL concentration seen in the clinical trial program (whether the number we accept as the truth is the 18.6% at 4 mg bid in the package insert or the "average of 12%" now being discussed) one would expect an increase in cardiovascular events….Based on studies with statins and plasmapheresis, changes in LDL concentration can be associated with substantial changes in vascular reactivity and endothelial function

---

[5] John Buse, M.D. Congressional Hearing Transcript (June 6, 2007).

over a time course of days to weeks.[6]

35.     Dr. Buse was not the only person to alert Defendant to the increased risk of heart attack and death associated with Avandia. Shortly after Dr. Buse raised concerns related to increased risk of heart attacks associated with Avandia, Public Citizen filed a petition, on March 7, 2000, seeking immediate class labeling changes for all marketed TZDs[7], including rosiglitazone.

36.     In an independent investigation of the TZDs, Public Citizen, after studying reviews by FDA Medical Officers, Statisticians, and Pharmacologists, transcripts of FDA advisory committee meetings, and scientific literature on trolitazone, rosiglitazone, and pioglitazone, argued that information associating rosiglitazone to heart attacks and serious cardiovascular injuries "was never included in the label, or seriously understated[8]."

37.     Public Citizen cited studies submitted to the FDA for approval that evidenced lack of efficacy and increase in cardiovascular risks, including but not limited to the increased risk of suffering a heart attack.

38.     Public Citizen argued that no where in the product insert was there any mention of myocardial infarction even where the increased risk of myocardial infarctions was found in Defendant's own studies.

39.     Public Citizen pointed to several studies, many of which were studies conducted by Defendant.  The conclusion reached by Public Citizen was that rosiglitazone was not as effective

---

[6] Letter from Dr. Buse to FDA (March 15, 2000).

[7] Public Citizen's Petition to the FDA requesting that it immediately require labeling for diabetes drugs troglitazone (Rezulin), rosiglitazone (avandia) and pioglitazone (Actos) (HRG Publication #1514) (March 7, 2000)

[8] Id. at 1.

as alleged and the ingestion of rosiglitazone increased the risk of myocardial infarction, death and other serious cardiovascular injuries.[9]

40.    This is obviously a major concern since diabetics are already susceptible to an increased risk of cardiovascular injury.

41.    In addition to the concerns raised by Dr. Buse and Public Citizen, there has also been three meta-analyses conducted. Each meta-analysis has found that Avandia increases the risk of cardiovascular-related injury, including but not limited to myocardial infarction and death.

42.    A meta-analysis combines the result of several studies that address a set of related research hypotheses.

43.    The first analysis was performed by Defendant, completed by September 2005 but was not handed over to the FDA until August of 2006. The meta-analysis consisted of 42 separate double-blinded, randomized, controlled clinical trials to assess the efficacy of rosiglitazone for treatment of type II diabetes compared to either placebo or other antidiabetic therapies in patients with type II diabetes. The combined studies included 8,604 patients on rosiglitazone and 5,633 patients randomized to a variety of alternative therapeutic regimens, including placebo.

44.    Defendant's own meta-analysis found an overall incidence of myocardial ischemia in rosiglitazone-treated subjects. The risk equated to more than a 30 percent excess risk of myocardial ischemic events in rosiglitazone-treated patients.

45.    A second meta-analysis conducted by Dr. Steven Nissen and Kathy Wolski titled Effect of Rosiglitazone on the Risk of Myocardial Infarction and Death from Cardiovascular Causes

---

[9] Id. at 6.

was published on May 21, 2007, in the New England Journal of Medicine (NEJM).

46.     Nissen and Wolski reviewed data available to them through published literature, the FDA website, and GlaxoSmithKline's clinical-trials registry. The analysis included a review of 42 clinical trials involving nearly 28,000 patients.

47.     Nissen and Wolski concluded that "[r]osiglitazone was associated with a significant increase in the risk of myocardial infarction and with an increase in the risk of death from cardiovascular causes that had borderline significance."[10]

48.     Hence, it was found that patients suffering from type II diabetes mellitus have a higher risk of experiencing a heart attack within seven years than non-diabetic patients. But a diabetic taking Avandia has a much greater risk of suffering a heart attack or serious cardiovascular event – an estimated 43 percent increase or greater –when compared with other diabetes drugs or placebos.

49.     On July 30, 2007, the FDA presented its results of the FDA meta-analysis. Similar to the Defendant and Nissen/Wolski findings, the FDA likewise found an increase risk of heart attack, cardiovascular death, stroke and other serious ischemic related adverse events and ultimately recommended that a boxed warning be placed on the Avandia label.

50.     Thus, while Defendant's rosiglitazone-containing drugs are marketed and sold by Defendant as antidiabetic agents that reduce a Diabetic patient's risk of heart attacks, studies conducted by Defendant showed that rosiglitazone actually increases those risks by 43 percent according to the Nissen/Wolski meta-analysis and by 31 percent according to Defendant's own meta-

---

[10] Nissen SE and Wolski K., *Effects of Rosiglitazone on the Risk of Myocardial Infarction and Death from Cardiovascular Causes,* N Engl J. Med; 356, May 21, 2007.

analysis.

51.     Yet, even with this information available to it, Defendant failed to warn consumers and the medical community about the increased risk of heart attacks and other serious injuries associated with Avandia.

52.     Moreover, Defendant has repeatedly engaged in a pattern of conduct of deliberately avoiding FDA recommendations as to which issues relating to public hazards should be warned about.

53.     For instance, after the FDA required Defendant to change its label on February 8, 2001, to reflect a risk of heart failure observed in patients on Avandia and insulin, Defendant defied FDA recommendations by engaging in false and misleading promotional activities.

54.     In a letter dated February 22, 2001, the FDA's Division of Drug Marketing, Advertising and Communications (DDMAC) informed Defendant that all promotional materials for Avandia should be revised to prominently include the new risks, no later than March 8, 2001.

55.     Defendant responded on March 1, 2001, wherein Defendant committed to include the new risk information by March 8, 2001.

56.     However, instead of complying with FDA requirements Defendant's sales representatives engaged in false or misleading promotional activities with respect to the new risk information in Avandia's product labeling.

57.     In a Warning Letter dated July 17, 2001, the FDA warned Defendant that it had engaged in a continual violation of federal regulations in its promotional activities for the marketing of Avandia.

58.     In that July 17, 2001 letter, the FDA warned that the DDMAC had been monitoring its marketing of Avandia and had:

> [C]oncluded that [Defendant] has promoted Avandia in violation of the Federal Food, Drug, and Cosmetic Act (Act) and its implementing regulations. See 21 U.S.C. §§331(a),(b), and 352(a),(n).
>
> Specifically, during the 10th Annual American Association of Clinical Endocrinologists (AACE) Meeting in San Antonio, Texas, on May 2-6, 2001, representatives of [Defendant] made oral representations denying the existence of serious new risks associated with Avandia at Defendant's promotional exhibit booth.
>
> Additionally, [Defendant] displayed Exhibit panels (AV013G) at the meeting that minimized these new risks associated with Avandia.
>
> Your promotional activities that minimize serious new risks are particularly troublesome because we have previously objected, in two untitled letters, to your dissemination of promotional material for Avandia that failed to present any risk information about Avandia or minimized the hepatic risk associated with Avandia. Despite your assurances that such violative promotion of Avandia had ceased, your violative promotion of Avandia has continued.[11]

59.     Following the May 21, 2007 NEJM publication of the Nissen/Wolski meta-analysis, the FDA issued a safety alert for Avandia and advised patients who take it to consult their doctors.

60.     On June 1, 2007, Defendant published a "Dear Avandia Patient" letter, which responded to the "recent press coverage about the safety of Avandia." Therein, Defendant stated that it "stands firmly behind Avandia" and that "Avandia is the most widely studied medicine for type II diabetes" and that the evaluation of clinical trials by "well-informed experts and researcher has been encouraging."

---

[11] Letter from Thomas Abrams, R.Ph., MBA, Director of the FDA's Division of Drug Marketing, Advertising and Communications to JP Garnier, Chief Executive Officer, GlaxoSmithKline (July 17, 2001) (on file with the FDA).

61.     At the congressional hearing on June 6, 2007, the FDA indicated that a black box warning should be added to rosiglitazone (Avandia), for increased risk of heart failure.

62.     On July 30, 2007, the FDA held an Advisory Committee Hearing on the safety of Avandia. The panel was determining whether to recommend keeping the label the same, adding a black box warning, or taking Avandia off the market all together.

63.     Dr. David Graham, testifying on behalf of the FDA, called for withdrawing Avandia and estimated that its toxic effects on the heart had caused up to 205,000 heart attacks and strokes, some fatal, from 1999 to 2006. For every month that Avandia is sold, Dr. Graham said, 1,600 to 2,200 patients will suffer more of those problems.

64.     The FDA provided testimony that Avandia offers no unique benefits compared to other drugs in battling diabetes, but that all indications point to increased risks of heart attack and sudden death.

65.     The panel of advisers to the Food and Drug Administration voted 20-to-3 that Avandia increases the risks of heart attacks.

66.     Despite knowing of this defect prior to the dates of Plaintiffs' injuries due to the use of Avandia, the Defendant took inadequate steps to advise physicians, hospitals, nursing homes and other health care providers of the possibility of heart attacks, cardiovascular injuries and death.

67.     Despite having actual notice of the dangerous propensities associated with Avandia, prior to the dates Plaintiffs, and each of them, purchased and used Avandia, Defendant took inadequate steps to advise consumers or medical providers, including Plaintiffs, of the known dangers of Avandia consumption, including but not limited to the increased risk of heart attacks, cardiovascular injuries and deaths.  Defendant failed to take adequate steps to ensure that the

Avandia it manufactured was safe for the public and would function in the manner in which they were intending.

68.     The Avandia ingested by Plaintiffs, and each of them,  was defective in that it exposed Plaintiffs, and each of them, to the risk of suffering adverse cardiac events and that it could ultimately lead to their deaths.  As a result of using said Avandia, as described above, Plaintiffs suffered the injuries described above, all of which was a direct and proximate result of their ingestion of Avandia.

69.     Even after being made aware of the numerous reports of myocardial infarctions, including those adverse events that occurred during Defendant's own studies, Defendant still failed to take all reasonable and necessary steps to ensure that the consuming public, including Plaintiffs were aware of the increased risk of suffering a heart attack or death. As stated in above, Defendant knew that Avandia caused heart attacks and deaths.

70.     Plaintiffs allege that Defendant was aware of the dangerous propensity of Avandia referred to herein, that it knew the risks and dangers posed to those using Avandia, and Defendant acted with willful and wanton disregard for the safety of the consuming public, including Plaintiffs..

71.     Defendant has widely promoted the use of Avandia as a safe and effective method of treating type II diabetes mellitus.

72.     Due to the efforts of Defendant, sales of Avandia rose to more than three billion ($3,246,555,709.7600) dollars in 2006.[12]

73.     Defendant's net income (adjusted earnings) in 2006 was approximately $10.6 billion.

---

[12] Http://www.gsk.com/investors/reps06/annual_review/key_products.htm

-16-

74. As a result of Defendant's efforts and actions, the sales of Avandia have become an enormous source of profits for Defendant.

75. Accordingly, Defendant had a significant financial incentive to suppress, misrepresent and/or conceal any potential dangers or risks associated with Avandia.

76. Plaintiffs assert that Defendant acted for the purpose of maximizing profits at the expense of the health of Plaintiffs, and the health of others using Avandia. Plaintiffs further assert that this Defendant had actual or constructive knowledge that Avandia posed a significant danger to anyone who used the drug, yet failed to take adequate or timely actions to prevent the injuries and deaths of users of Avandia or to warn the public of these dangers.

77. Defendant failed to adequately or appropriately disclose material information relating to the dangers associated with Avandia. As a result, users of Avandia, including Plaintiffs, were unaware of these dangers, did not have adequate information to know the warnings signs of being exposed to rosiglitazone and were therefore unable to avoid injury caused by using this defective drug product.

78. The Defendants thereby acted with fraud, malice, oppression and a conscious disregard for the Plaintiffs' and general public's safety, who accordingly requests that the trier of fact, in the exercise of sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendant for its conduct, in an amount sufficiently large to be an example to others and deter Defendant and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendant.

## COUNT I - STRICT LIABILITY

79.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs above as though fully set forth herein.

80.     Defendants designed, manufactured, sold and/or supplied Avandia to Plaintiffs, and each of them..

81.     The known risks and dangers of ingesting Avandia include, but are not limited to, an increased risk of congestive heart failure, heart attacks and other adverse cardiac events.  These facts were known to the Defendants.

82.     At all relevant times herein, the potential risks and dangerous injury caused by Avandia presented substantial danger to Plaintiffs, and each of them, and the general public from ingesting the drug Avandia.

83.     The potential risks and dangers of ingesting Avandia include, but are not limited to, congestive heart failure, heart attacks, strokes and other adverse cardiac events.

84.     At all times mentioned herein, ordinary consumers would not have recognized the potential risks and dangers Avandia posed to diabetic patients because its use was specifically promoted to improve the health of diabetic patients.

85.     At all times relevant herein, Defendants failed to adequately warn of the potential risk and dangers posed to diabetic patients ingesting Avandia.  Avandia was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of Avandia, and given the severity of the adverse effects, the warnings given Plaintiffs did not accurately reflect the symptoms and severity of the adverse effects. At all times mentioned herein, Avandia was and is dangerous to diabetic patients who ingest

-18-

Avandia, and these risks and dangers were known or knowable at the time of its distribution to and ingestion by Plaintiffs, and Defendant failed to provide proper warnings of such risks and dangers to Plaintiffs.

86.     At all times mentioned herein, the Avandia distributed to and ingested by Plaintiffs, was used in a way reasonably foreseeable to Defendant. The product was defective in that the product manufactured and distributed differed from the manufacturer's intended results of increasing insulin sensitivity without causing other dangerous injury including heart attack and other adverse cardiac events. These defects caused serious injuries to the user when used in its intended and foreseeable manner, i.e., when it was ingested as prescribed, and in the manner recommended by Defendant. The foreseeable risks of serious harm were so much so that Plaintiffs and the general public, having known of such foreseeable risks and alleged benefits, would not have ingested Avandia.

87.     Avandia was defective due to, not only inadequate warnings and misrepresentation to the general public, but also, defective by inadequate warnings and misrepresentations to healthcare professionals. Defendant knew that had healthcare professionals been adequately warned of the serious risks of injury to their patients, healthcare professionals would not have prescribed Avandia to said patients. None of the Plaintiffs, nor their physicians were warned of the significant dangers from ingesting Avandia which was known by Defendant.

88.     Defendant acted with conscious disregard for the foreseeable harm caused by the ingestion of Avandia by Plaintiffs.

89.     Defendant failed to warn of these serious risks after Defendant had knowledge of same. The information provided to consumers did not reflect Defendant's knowledge that Avandia

was not safe and effective as indicated in its aggressive marketing campaign.  Nor were consumers made aware that ingesting the drug could result in congestive heart failure, heart attack, or stroke.

90.    As a result of the defective dangerous condition of Avandia manufactured and/or supplied by Defendant,  Plaintiffs, and each of them, suffered the cardiac problems more fully described above.

91.    As a result of Plaintiffs' ingestion of Avandia, Plaintiffs, and each of them, have required and will continue to require healthcare and services; have incurred and will continue to incur medical and related expenses; have suffered a diminished capacity to earn wages in the future; have suffered and will continue to suffer mental anguish; diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, and other such damages.

92.    In doing the acts herein alleged, the Defendant acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendant and others from engaging in similar conduct in the future.  Said wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendant.

WHEREFORE, Plaintiffs, and each of them, pray for judgment as hereinafter set forth.

## COUNT II - NEGLIGENCE

93.    Plaintiffs  hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs above as though fully set forth herein.

94.    Defendant and its representatives were merchants or sellers of Avandia.  At all times herein, Defendant had a duty to exercise reasonable care in the design, manufacturing, marketing,

sale, testing and/or distribution of Avandia into the stream of commerce.

95.     Defendant failed to exercise ordinary care in the design, manufacturing, marketing, sale, testing, and/or distribution of the Avandia drug into interstate commerce. Defendant knew that its Avandia drug greatly increased Plaintiffs' risks of having a heart attack and/or other negative cardiovascular consequences.

96.     At all times herein mentioned, Defendant knew, or in the exercise of reasonable care, should have known, that Avandia was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure Plaintiffs and other users. Despite the fact that Defendant, knew, or should have known that Avandia could cause a heart attack and/or other cardiac injuries, it continued to market, distribute, and sell Avandia to the public without proper warnings.

97.     The Defendant so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over-promoted and supplied Avandia, that it was dangerous and unsafe for the use and intended purpose of increasing insulin sensitivity in Plaintiffs.

98.     Defendant knew Plaintiffs, or others similarly situated, would foreseeably suffer such injuries and/or risk of death as a result of Defendant's failure to exercise ordinary care by not disclosing the known risks of congestive heart failure or other adverse cardiac events. Defendant's breach of duty to disclose this information caused Plaintiffs, and each of them, to suffer the cardiac problems more fully described above.

-21-

99.     As a result of the carelessness and negligence of the Defendant, the aforesaid product caused Plaintiffs, and each of them, to thereby sustain the damages and injuries as herein alleged.

WHEREFORE, Plaintiffs, and each of them, pray for judgment as hereinafter set forth.

## COUNT III – BREACH OF IMPLIED WARRANTY

100.     Plaintiffs  hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs above as though fully set forth herein.

101.     At  the  time  Defendant  marketed,  distributed,  and  sold  Avandia  to  Plaintiffs, Defendant warranted that Avandia was merchantable and fit for the ordinary purposes for which it was intended.

102.     Defendant sold Avandia with an implied warranty that it was fit for the particular purpose of safely treating diabetes.

103.     Members of the consuming public, including Plaintiffs, were intended third party beneficiaries of the warranty.

104.     Avandia was not merchantable and fit for its ordinary purpose because it had a known propensity to lead to heart attack and stroke, among other serious side effects, and could  cause death.

105.     Avandia was not fit for the particular purpose of safely treating diabetes, because it had a known propensity to lead to heart attack and death, among other serious side effects.

106.     Plaintiffs, and each of them,  reasonably relied upon Defendant's representations that Avandia was safe and free of defects and was safe for treating diabetes.

107.     Defendant's breach of the implied warranty was the direct and proximate cause of Plaintiffs' injuries as described above..

-22-

108.    The conduct of Defendant, as set forth herein, was so outrageous and improper as to constitute willful, wanton and reckless disregard for the safety of Plaintiffs and the users and ultimate consumers of their product.  Defendant made conscious decisions not to redesign, revise the label, warn or inform the consuming public and as such Plaintiffs are entitled to and hereby claim punitive damages in this action.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory damages in an amount to be determined by a jury and demands trial by jury of all issues triable as of right by a jury.

## COUNT IV - BREACH OF EXPRESS WARRANTY

109.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs above as though fully set forth herein.

110.    Defendant expressly warranted that Avandia was safe and effective to members of the consuming public, including Plaintiffs.

111.    Members of the consuming public, including Plaintiffs, were intended third party beneficiaries of the warranty.

112.    Defendant marketed, promoted and sold Avandia as safe for the treatment of diabetes.

113.    Avandia does not conform to these express representations because it is not safe and has serious side effects, including myocardial infarction and death.

114.    Defendant breached its express warranty in one of more of the following ways:

a.    Avandia, as designed, manufactured, sold and/or supplied by Defendant, was defectively designed and placed in to the stream of commerce by Defendant in a defective and unreasonably dangerous condition.

-23-

b.      Defendant failed to warn and/or place adequate warnings and instructions on Avandia.

c.      Defendant failed to adequately test Avandia.

d.      Defendant failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from Avandia.

115.    Plaintiffs, and each of them, reasonably relied upon Defendant's warranty that Avandia was safe and effective when he purchased and used the medication.

116.    Plaintiffs' injuries were the direct and proximate result of Defendant's breach of its express warranty.

117.    The conduct of Defendant, as set forth herein, was so outrageous and improper as to constitute willful, wanton and reckless disregard for the safety of Plaintiffs and the users and ultimate consumers of this product. Defendant risked the lives of their consumers, including Plaintiffs, with knowledge of the safety and efficacy not to redesign, revise the label, warn or inform the consuming public, in addition to suppressing this information from the general public.  As such Plaintiffs are entitled to and hereby claims punitive damages in this action.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory damages in an amount to be determined by a jury and demands trial by jury of all issues triable as of right by a jury.

## COUNT V - FRAUD MISREPRESENTATION

118.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs above as though fully set forth herein.

119.    At all times mentioned herein, Defendant had the duty and obligation to disclose to

Plaintiffs, and to their physicians the true facts concerning the drug Avandia; that is, Avandia is known to cause a significant and serious increase in the risk of congestive heart failure and other adverse cardiac events.

120.    Then at all times herein mentioned, Defendant intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs and their physicians with the intent to defraud Plaintiffs, and each of them.

121.    That at all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set above, and had they been aware of said facts they would not have acted as they did, that is, Plaintiffs would not have ingested the drug Avandia.

122.    As a result of the concealment or suppression of the facts set forth above, Plaintiffs, and each of them, has sustained damage as set forth above.

123.    In doing the action herein alleged, Defendant acted with oppression, fraud and malice and Plaintiffs are entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages, and to Defendant's wealth, sufficiently large to be an example to others, and to deter the Defendant and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiffs, and each of them, pray for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

124.    Plaintiffs pray that a judgment be entered in favor of Plaintiffs in such aggregate sum as will fairly and reasonably compensate Plaintiffs for damages arising out of Defendant's conduct as described herein.   The conduct of Defendant, as alleged herein, was a direct, proximate and producing cause of the damages to Plaintiffs and the following general and specific damages:

1.    For general damages in a sum within the jurisdiction of this Court;

2.      For medical, hospital, and incidental expenses, according to proof;

3.      For loss of earnings and for loss of earning capacity, according to proof;

4.      For punitive or exemplary damages; and

5.      For such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury in this case as to such issues so triable.

Dated this 3rd day of November, 2010.

> THE MAHER LAW FIRM,
> A Professional Association
> 631 W. Morse Blvd., Suite 200
> Winter Park, FL 32789
> Phone: (407) 839-0866
> Fax: (407) 425-7958
> Attorneys for Plaintiff
>
> _____
> STEVEN R. MAHER
> Pennsylvania Bar No.: 201575
> smaher@maherlawfirm.com
>
> */s/ JASON R. FRAXEDAS*
>
> _____
> JASON R. FRAXEDAS
> Florida Bar No.: 0063887
> jrfraxedas@maherlawfirm.com
>
> */S/ THOMAS P. CARTMELL*
>
> _____
> THOMAS P. CARTMELL, ESQ.
> tcartmell@wcllp.com
> Missouri Bar No.: 45366
> WAGSTAFF & CARTMELL, LLP
> 4740 Grand Avenue, Suite 300
> Kansas City, MO   64112-2255
> Phone: (816) 701-1100
> Fax.: (816) 531-2372

5100386                              **Attorneys for Plaintiffs**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | :<br>:<br>:   **MDL No. 1871**<br>:   **07-md-01871**<br>: |
| THIS DOCUMENT APPLIES TO:<br>ALL ACTIONS | :<br>:<br>:<br>: |

## MEMORANDUM & ORDER REGARDING CONSOLIDATED FILING BY PLAINTIFFS

**Rufe, J.**                                                       **May 14, 2008**

Presently before the Court is the procedural issue whether to permit multiple, unrelated plaintiffs to file a single complaint in this MDL, provided the plaintiffs seeking to make such a consolidated filing are domiciled in the same federal judicial district. Counsel for the parties have briefed the question and have addressed it in oral argument on May 9, 2008, and the matter is ready for decision without prejudice.

Under Federal Rule of Civil Procedure 20(a)(1), "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief . . . with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."[1] Courts charged with managing multi-district litigation have, in the preliminary discovery stages of such cases, and in a provisional fashion, taken a rather expansive view of the conditions that would justify joinder, and have permitted joinder of plaintiffs domiciled in the same jurisdiction for the purpose of consolidated filing in the interest of

---

[1] Fed. R. Civ. P. 20 (2007).



court efficiency and limiting expense and inconvenience to parties.[2]  As plaintiffs' counsel have

argued, in this case, to permit consolidated filings by plaintiffs domiciled in the same jurisdiction,

at least during the early stages of fact discovery, would appear to promote the aim of "conserv[ing]

the resources of the parties, their counsel and the judiciary" which this MDL was in part centralized

to accomplish.[3]    The decision to provisionally and for a limited purpose permit joinder will be

evaluated in the near future to determine whether "such joinder proves to be inefficient or prejudicial

to any parties;"[4] if such is found to be the case, a corrective order may issue.

ACCORDINGLY, this 14th day of May 2008, upon consideration of Plaintiffs'

Proposal in Support of Allowing Joinder of Multiple Parties in a Single Complaint [Doc. No. 116],

and Defendant's Memorandum Regarding Misjoinder of Multiple Unrelated Claimants in One

Complaint [Doc. No. 117], and oral argument in Court by counsel for the parties, it is hereby

ORDERED as follows:

1. This Order applies to any action currently pending in, subsequently filed in, or

removed or transferred to, this MDL in which the complaint includes more than one individual

plaintiff who alleges that he or she took Avandia and suffered personal injury as a result ("multi-

plaintiff actions").  This Order does not apply to complaints in which only one individual alleges

taking Avandia and suffering personal injury as a result thereof, but which include additional,

---

[2] See, e.g., In re: Diet Drugs, 1999 WL 554584 No. Civ.A. 98-20478, 1203 (E.D. Pa. July 16, 1999) (MDL Docket 1203); see also In re: Medtronic Inc., Implantable Defibrillators Prod. Liab. Litig., (D. Minn. Jan. 8, 2007) (MDL Docket 1726) (attached as Exhibit 1 to Plaintiffs' Brief).

[3] Order of the Judicial Panel on Multidistrict Litigation of October 16, 2007, at 2 [Doc. No. 1].  The same desirable efficiencies would not seem to be gained by permitting joinder, even on a provisional basis, by unrelated plaintiffs who are not domiciled in the same jurisdiction, and no precedent has been brought forth by the parties or unearthed by the Court which would support permitting such joinder.

[4] In re: Medtronic Inc., Implantable Defibrillators Prod. Liab. Litig., (D. Minn. Jan. 8, 2007) (MDL Docket 1726) (attached as Exhibit 1 to Plaintiffs' Brief).

derivative plaintiffs, such as spouses or children.

2. Multi-party complaints including multiple, unrelated personal injury plaintiffs who each are domiciled in the same federal judicial district shall be permitted. This ruling is made **without prejudice**.

3. Unrelated plaintiffs domiciled in different federal judicial districts shall not be permitted to jointly file a single complaint. Except for the first-named plaintiff, each plaintiff (and his or her derivative claimants, if any) named in a complaint currently pending or subsequently filed in, or transferred or removed to, this MDL which includes multiple, unrelated plaintiffs domiciled in different federal judicial districts shall be severed from the complaint, pursuant to Fed. R. Civ. P. 21, and in accordance with the following process.

a. Such multi-plaintiff actions shall be severed UNLESS (1) a Motion to Remand pertaining to the action is currently pending before the Court; or (2) a Motion to Remand is filed in the action within the next **twenty-one (21) days**. For such actions, severance by this Court will occur only upon entry of a decision to deny remand.

b. Within **twenty-five (25) days** of the date of the filing of this Order, liaison counsel shall jointly submit to the Court a report listing those pending actions that will be required to be severed pursuant to this Order, and also listing those pending multi-party actions which will not be required to be severed immediately due to a pending motion to remand. Liaison counsel shall also at that time submit a form of order which would effectuate the dictates of this ruling in the appropriate actions. Upon receipt and due consideration of the report of liaison counsel, the Court will enter an order to sever the affected plaintiffs from the appropriate actions.

4. Any plaintiff severed pursuant to the process set forth in paragraph 3, above, may thereafter file a complaint in this District, or in another district with proper venue, within **thirty (30)**

**days** from the date of the severance and, for purposes of the applicable limitation period, will be deemed to have commenced the action on the date of the filing of the multi-plaintiff complaint in which the plaintiff was named.

5. Multi-plaintiff actions permitted by this Order shall not be deemed joined for trial absent a Court order issued after duly-noticed motion filed by plaintiff's counsel. In making any such motion, the burden shall remain on the party seeking joinder to establish that joinder is appropriate. Further, the filing of any multi-party action shall not be construed as a waiver of any contention by Defendant that such joinder is improper.

6. Within **ninety (90) days** of the date of the filing of this Order, counsel for the parties shall report to the Court on the status of the procedural issue herein addressed, including a statement of any efficiencies or inefficiencies which have materialized or become apparent and argument as to the ongoing benefit in continuing to permit joinder in the affected actions to the extent considered in this Order.[5]

It is so **ORDERED**.

BY THE COURT:

_____

**CYNTHIA M. RUFE, J.**

---

[5] Along with the reports, counsel shall provide the Court with a proposed form of order reflecting the relief requested or positions put forth by the parties. Plaintiffs' unexplained failure to provide a form of order with the filings related to the instant issue was not helpful to the Court and should not be repeated by either party in similar circumstances in this MDL.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| In re: AVANDIA MARKETING, SALES | : | MDL 1871 |
| PRACTICES AND PRODUCTS LIABILITY | : | 07-MD-1871 |
| LITIGATION | : | |
| | | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |

### STIPULATION AND ORDER REGARDING PRETRIAL ORDER NO. 4

It is hereby STIPULATED and AGREED by and between the undersigned representative for the Plaintiff's Steering Committee and counsel for Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") as follows:

### I.      Scope of This Stipulation and Order

This Stipulation and Order applies to any action currently pending in, subsequently filed in, or removed or transferred to, this MDL in which the complaint includes more than one individual plaintiff who alleges that he or she took Avandia and suffered personal injury as a result ("multi-party complaints"). This Stipulation and Order does not apply to complaints in which only one individual alleges taking Avandia and suffering personal injury as a result thereof, but which include additional, derivative plaintiffs, such as spouses or children.

-1-

EXHIBIT

"B"

## II.    Suspension of Certain Aspects of Pretrial Order No. 4

In Pretrial Order No. 4 ("PTO 4"), this Court permitted, on a provisional basis, the filing of multi-party complaints involving multiple, unrelated personal injury plaintiffs provided that the plaintiffs were all domiciled in the same federal judicial district. *See* PTO-4 at ¶ 2.  Unrelated plaintiffs domiciled in different federal judicial districts were not permitted to jointly file a single complaint. *See* PTO-4 at ¶ 3.  After the entry of PTO-4, the parties agreed on a form of Tolling Agreement (*see* Pretrial Order No. 7).  Given this development, the parties stipulate and agree that paragraph 2 of PTO-4, which permitted the filing of multi-party complaints involving unrelated personal injury plaintiffs domiciled in the same federal judicial district, is hereby suspended.  Accordingly, the filing of multi-party complaints involving unrelated personal injury plaintiffs, including such plaintiffs domiciled in the same federal judicial district, is no longer permitted in this MDL.

If , in the future, GSK were to mass-terminate the tolling agreements, paragraph 2 of PTO-4 will automatically be reinstated.  GSK reserves the right, at such time, to renew its opposition to paragraph 2 of PTO-4, and seek to permanently modify PTO-4 to prohibit the ability to file multi-party complaints.

**III.    Revised Joint Report On Multi-Plaintiff Complaints**

        In paragraph 3b of PTO-4, this Court charged liaison counsel with the duty to file a report "listing those pending actions that will be required to be severed" and "listing those pending multi-party actions which will not be required to be severed immediately due to a pending motion to remand."  In light of discussions with certain plaintiff's counsel regarding the classification of their cases, and Pretrial Order No. 11, the parties now provide the following revised report.  An agreed upon proposed form of severance order, consistent with this report, is also attached as Exhibit A.

    **A. Pending Actions Required to be Severed**

        As of July 10, 2008, liaison counsel have identified a total of 32 cases in this litigation involving multiple, unrelated plaintiffs. Of those 32 cases, 21 must be severed immediately. A list of the cases which must be severed immediately is attached hereto as Exhibit B.

    **B. Pending Actions Not Requiring Immediate Severance Due to Motion to Remand**

        Liaison counsel have identified 5 pending actions in this MDL in which a Motion to Remand was filed on or before June 4, 2008. These 5 cases are listed in the spreadsheet attached hereto as Exhibit C.  Pursuant to PTO 4, these actions do not need to be severed at this time.

        In addition to the 5 cases identified in Exhibit C, 3 cases, which have not yet been transferred to this MDL, are pending in other federal judicial districts and are awaiting hearings, in the originating judicial districts, on Motions to Remand those cases to state court. Each of these actions is subject to a Conditional Transfer Order and is pending resolution by the Judicial Panel on Multidistrict Litigation ("JPMDL") of plaintiffs' Motions to Vacate Conditional Transfer Orders.  To date no Court has ruled on a remand motion prior to MDL transfer, and the

JPMDL has overruled all Motions to Vacate in similar circumstances.  A Motion to Remand has been recently filed in an additional action but a Motion to Vacate Conditional Transfer Order has not yet been filed.  For this Court's convenience, a list of those 4 cases is attached hereto as Exhibit D.  Because these cases would not be immediately severed, and have not yet been transferred to this MDL, they are not included in the attached proposed PTO.

### C. Pending Action Not Yet Transferred to this MDL

One action involving multiple, unrelated plaintiffs has no Motion to Remand pending, but has not yet been transferred to this MDL.  GSK has advised the JPMDL that this action is a potential Tag Along Action.  The action is listed on the spreadsheet attached hereto as Exhibit E.  Liaison counsel anticipate that the action will be transferred to this MDL in the near future and will be required to severed.

### D. Pending Action Not to Be Severed

Liaison counsel have identified only one case involving multiple unrelated plaintiffs that will not be required to be severed.  That one case is Lawrence Brown, et al. v. GSK which was originally filed in the Western District of Louisiana under docket number 08-cv-00709.  The parties have agreed not to sever this one case at this time since the plaintiffs are from Louisiana and arguably not subject to a tolling agreement.


/s Sean P. Fahey                         /s Stephen A. Corr
Nina M. Gussack                          Vance Andrus
Sean P. Fahey                            Andrus Boudreaux PLC
Pepper Hamilton LLP                      1775 Sherman Street, Suite 3100
3000 Two Logan Square                    Denver, CO 80203
Philadelphia, PA  19103-2799
                                         Thomas E. Mellon, Jr.
                                         Stephen A. Corr

Mellon, Webster & Shelly
87 N. Broad Street
Doylestown, PA  18901

Plaintiffs' Steering Committee

Counsel for SmithKline Beecham
Corporation d/b/a GlaxoSmithKline

**SO ORDERED**

_____
Cynthia M. Rufe, District Judge

Dated: _____, ____, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: AVANDIA MARKETING, | : | |
| SALES PRACTICES AND PRODUCTS | : | **MDL 1871** |
| LIABILITY LITIGATION | : | **07-md-1871** |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO | : | |
| ALL ACTIONS | : | |
| | : | |

### PRETRIAL ORDER NO. 55

**AND NOW**, this 20th day of April, 2009, pursuant to the joint submission of the parties, and after due consideration by this Court, it is hereby **ORDERED** as follows:

### AMENDED FORM OF AVANDIA TOLLING AGREEMENT

1.     The Court has been provided with an amended form of Tolling Agreement, which has been agreed upon by the PSC and counsel for GlaxoSmithKline. A copy of the amended Tolling Agreement and instructions for completing the form of amended tolling agreement, provided by counsel for the defendant, is attached to this Order. For the convenience of the parties, a version of the form of amended Tolling Agreement will be promptly posted on the website of the United States District Court for the Eastern District of Pennsylvania, at: http://www.paed.uscourts.gov/mdl1871.asp.

2.     The Court authorizes the use of the approved Fact Sheet by claimants who agree with GlaxoSmithKline to enter such a tolling agreement, and, in the event that a claimant files suit, the Fact Sheet shall become part of the discovery record in the suit.



EXHIBIT
"C"

## REQUIREMENT TO PRODUCE BASIC MEDICAL RECORDS

3.     Within one week of the date of this Order, GSK may produce to Plaintiffs'
counsel in all cases part of Discovery Group One a list of those "basic medical records" (as
defined below) that it has been unable to obtain through the medical authorizations provided with
the Plaintiffs' Fact Sheet, together with a copy of this Order.  Within one week of such notice,
Plaintiffs' counsel shall:  (1) produce "basic medical records" for the Avandia User; or (2)
demonstrate that he/she has ordered "basic medical records" (by providing a copy of an order
form by a medical records vendor, or a copy of the actual request made by said counsel) and
confirm that the records will be provided to GSK's counsel upon receipt of same.  Failure to
comply with this paragraph shall constitute a "Threshold Deficiency" and, absent good cause
shown, subject the case to potential dismissal under Pretrial Order No. 50.

(a)     "Basic medical records" include:

(1)     Proof of use in the form of pharmacy records, prescriber's
medical records or in the absence of either an affidavit from the plaintiff explaining such use, and
a statement of counsel of the efforts made to obtain usage records, and the reason(s) why such
records are no longer available, and

(2)     Medical records of the prescriber from the present back to
one year before the date of injury claimed by the Avandia User, and

(3)     A discharge summary or other medical record establishing
and describing the claimed injury.

It is so **ORDERED**.

BY THE COURT:

/s/ Cynthia M. Rufe

_____
**CYNTHIA M. RUFE, J.**

# Pepper Hamilton LLP
Attorneys at Law

## TO:  CLAIMANTS' COUNSEL

### INSTRUCTIONS FOR COMPLETING FORM OF AVANDIA TOLLING AGREEMENT

1.  The form is in Adobe PDF format.  Use the "tab" key to move to each field that must be completed.

2.  The "Effective Date" will be the date indicated on page 5 of the Agreement, when executed by GSK.  GSK will enter this Date and provide an executed copy of the Agreement to Claimant.  GSK will review completed forms of agreement, and will use its best efforts to respond on behalf of GSK within 48 hours.  If you do not receive a response from GSK within 48 hours, you must contact GSK through Pepper Hamilton.

3.  The attorney for the Claimant should execute the form with a clear indication of the attorney's name and address, including e-mail address and fax number.

4.  Exhibit A should be completed in full.  GSK will not execute the form of agreement without this information.  At the time of the request for tolling, Claimant must also satisfy the Requirement Regarding Basic Medical Records described on page 2 of the Agreement.

5.  The form of agreement must not be changed.

6.  The completed form should be sent to Anthony Vale and Alice Marshall, Pepper Hamilton LLP, Two Logan Square, Philadelphia, PA 19103.  The preferred method of submission is by e-mail to avandiatolling@pepperlaw.com, with a copy of the email to valea@pepperlaw.com and marshalla@pepperlaw.com, attaching 1) a PDF copy of the Agreement and 2) Exhibit A in excel format.  The Agreement and Exhibit A are available for download from the Court's website at: http://www.paed.uscourts.gov/mdl1871.asp.



EXHIBIT

"D"

## AVANDIA TOLLING AGREEMENT

THIS AGREEMENT is by and between SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"), and the individual(s) identified on Exhibit A (the "Claimant(s)"), and any person whose claim derives from the ingestion of Avandia® and/or any compound containing the active ingredient rosiglitazone maleate, including Avandamet® and Avandaryl®, by the person(s) identified on Exhibit A (collectively, "the Parties").

1.      The term "Tolling Period" shall refer to the period of time commencing on the "Effective Date" identified on page 5 hereof and continuing until 30 days after receipt by either GSK or Claimant of a written notice sent by mail and email to the address of counsel listed at the end of this Agreement that henceforth this Agreement shall not apply to the Claimant.

2.      The term "Claims" shall refer to any demands, actions, causes of action, suits, debts, accounts, contracts, damages, claims, equitable remedies, statutory remedies, both in law and equity, relating to or arising out of the purchase or ingestion of Avandia, Avandamet or Avandaryl, whether or not such Claims are liquidated, unliquidated, fixed, contingent, direct, indirect, matured, unmatured, due, ripe, disputed, undisputed, legal, equitable or statutory on behalf of the Claimant and any others whose claims are derivative of the Claimant's alleged injury from Avandia, Avandamet or Avandaryl.

3.      The term "Limitations" shall mean any and all time limitations on the assertion, prosecution, or filing or service of any lawsuit in federal court only with respect to the Claims, including any and all statutes of limitations, statutes of repose, time limitations in equity, statutory time conditions on filing suits, laches, and any other time bars.

4.      The Claimant warrants that the information set forth on Exhibit A is true and correct to the best of his or her knowledge, information and belief.  Claimant represents that he or she has complied with the Requirement Regarding Basic Medical Records (described below).

5.      Requirement Regarding Basic Medical Records.

a.      At the time of the request for tolling, counsel for the claimant shall either (1) produce "basic medical records" (defined below) for the claimant at the time of the request or (2) demonstrate that he/she has ordered "basic medical records" (by providing a copy of an order form by a medical records vendor, or a copy of the actual request made by said counsel) and confirm that the records will be provided to GSK's counsel with the completed Plaintiff Fact Sheet (60 days after the entering into the Tolling Agreement) or upon receipt of same, whichever is earlier. Failure timely to do either may result in GSK terminating the previously granted Tolling Agreement.

b.      "Basic medical records" include:

(1)      Proof of use in the form of pharmacy records, prescriber's medical records or in the absence of either an affidavit from the claimant explaining such use, and a statement of counsel of the efforts made to obtain usage records, and the reason(s) why such records are no longer available; and

(2)      Medical records of the prescriber from the present back to one year before the date of injury claimed by the claimant; and

(3)      A discharge summary or other medical record establishing and describing the claimed injury.

6.      GSK agrees to the tolling of the Limitations during the Tolling Period with respect to all Claims held by Claimant, provided, however, that this Tolling Agreement shall not revive existing Claims, if any, that have expired under the applicable statutes of limitations prior to the commencement of the Tolling Period. As an example, if any applicable limitation period were to have expired prior to the Effective Date of this Tolling Agreement, then GSK's right and ability to assert the statute of limitations in defense of the Claims is fully preserved.

A-2

7.      This Tolling Agreement shall not be construed as an admission or indication that GSK agrees that any Claimant has meritorious claims against GSK.

8.      If, after execution of this Tolling Agreement, counsel for Claimant ceases to represent a Claimant, GSK shall be notified by facsimile or email within five business days.  If Claimant or Claimant's new counsel does not agree to be bound by this Tolling Agreement within ten business days after the representation terminates, this Agreement shall cease to be effective as to the Claimant.

9.      The Parties agree that within sixty days of the Effective Date, each Claimant will complete the currently-approved Fact Sheet (including the authorizations) in the In Re Avandia Marketing, Sales Practice and Products Liability Litigation, MDL 1871 (E.D. Pa.), and serve the completed Fact Sheet and signed authorizations on GSK.

10.      If a Claimant fails to complete and serve a Fact Sheet within sixty days, no tolling under this Tolling Agreement shall apply, and the statute of limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.  If a Claimant serves a deficient Fact Sheet, GSK at its option may terminate this Agreement pursuant to paragraph 1 above, or demand that the deficiencies be corrected promptly.

11.      This Tolling Agreement shall be governed by the laws of Pennsylvania, excluding its choice of law rules, and any dispute between the parties arising out of, or as to the meaning or effect of, this Agreement shall be resolved exclusively by the MDL 1871 Court, which shall have personal jurisdiction over the Claimant.

12.      If any Claimant files any lawsuit concerning a tolled claim, the Claimant shall file such lawsuit only in (i) the federal District where s/he is domiciled or was prescribed Avandia, and will consent to the transfer of the lawsuit to MDL 1871, or (ii) directly in the Eastern District of Pennsylvania.  Claimant agrees that when filing a lawsuit in federal court, he or she will not name any non-diverse person as a defendant.  If a Claimant files a lawsuit in state

court, or resists transfer to MDL 1871 of a case filed in federal court, no tolling under this Tolling Agreement shall apply, and the statute of limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.  This paragraph shall not apply to a Claimant who is a citizen of Pennsylvania and who files his or her lawsuit in state court in Pennsylvania.

13.     The Parties have been represented by counsel of their choice.  By executing this Tolling Agreement, counsel for Claimant represents that s/he has entered into a written retention agreement with the Claimant.  The undersigned attorney warrants and represents that he or she has the express authority of the Claimant to enter into this Tolling Agreement.

14.     This Tolling Agreement contains the entire agreement of the parties.  This Tolling Agreement cannot be modified except by a writing signed by the Parties or their attorneys.

15.     The Parties hereto agree that the existence and terms of this Tolling Agreement shall be deemed confidential and shall not be disclosed to anyone except as otherwise provided or required by law.

IN WITNESS WHEREOF, the parties have executed this Tolling Agreement this

day of _____, 2009.


NINA M. GUSSACK, attorney for SmithKline
Beecham Corporation d/b/a GlaxoSmithKline


_____          _____
Attorney for Claimant(s)                 Nina M. Gussack
                                         Anthony C.H. Vale
                                         PEPPER HAMILTON LLP
                                         3000 Two Logan Square
                                         18th and Arch Streets
                                         Philadelphia, PA 19103
                                         (215) 981-4502
                                         valea@pepperlaw.com

## Jason R. Fraxedas

| | |
|---|---|
| **From:** | Stephens-El, Jeanette [stepheej@pepperlaw.com] |
| **Sent:** | Thursday, June 03, 2010 3:03 PM |
| **To:** | 'smaher@maherlawfirm.com'; 'jrfraxedas@maherlawfirm.com' |
| **Cc:** | Marshall, Alice |
| **Subject:** | FW: Avandia/Maher |
| **Attachments:** | DOC001.PDF |

The attached correspondence is being forwarded to you on behalf of Alice Marshall.  Please
direct all inquiries to her attention.

Jeanette Stephens-El
Legal Secretary to
William J. Brennan, IV
Alice Marshall
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Phone: 215.981.4342 - Direct
Fax: 215.981.6161 - Fax
stepheej@pepperlaw.com

This email is for the use of the intended recipient(s) only. If you have received this email
in error, please notify the sender immediately and then delete it. If you are not the
intended recipient, you must not keep, use, disclose, copy or distribute this email without
the author's prior permission. We have taken precautions to minimize the risk of transmitting
software viruses, but we advise you to carry out your own virus checks on any attachment to
this message. We cannot accept liability for any loss or damage caused by software viruses.
The information contained in this communication may be confidential and may be subject to the
attorney-client privilege. If you are the intended recipient and you do not wish to receive
similar electronic messages from us in the future then please respond to the sender to this
effect.

This email is for the use of the intended recipient(s) only. If you have received this email
in error, please notify the sender immediately and then delete it. If you are not the
intended recipient, you must not keep, use, disclose, copy or distribute this email without
the author's prior permission. We have taken precautions to minimize the risk of transmitting
software viruses, but we advise you to carry out your own virus checks on any attachment to
this message. We cannot accept liability for any loss or damage caused by software viruses.
The information contained in this communication may be confidential and may be subject to the
attorney-client privilege. If you are the intended recipient and you do not wish to receive
similar electronic messages from us in the future then please respond to the sender to this
effect.



1

# Pepper Hamilton LLP
#### Attorneys at Law

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Fax 215.981.4750

Alice Marshall
Direct dial: (215) 981-4601
marshala@pepperlaw.com

June 3, 2010

**Via PDF and First Class Mail**

Steven R. Maher, Esquire
Jason R. Fraxedas, Esquire
The Maher Law Firm
631 W. Morse Blvd. Suite 200
Winter Park, FL 32789
smaher@maherlawfirm.com
jrfraxedas@maherlawfirm.com

Re:   Avandia Tolling Agreement Claimants

Dear Counsel:

We refer to the claimants listed on the attached chart who were included on tolling agreements executed by GlaxoSmithKline, LLC ("GSK").

On behalf of GSK, pursuant to paragraph 1 of the Tolling Agreement, we hereby terminate the tolling agreements for each of these claimants effective thirty (30) days henceforth, namely July 3, 2010.

We remind you that paragraph 12 of the Tolling Agreement governs the potential re-filing of any tolled claims.

Please feel free to contact me with any questions.

Sincerely,

Alice Marshall

Alice Marshall

AM/jse

**Maher Law Firm**
**Tolling Agreement Claimants**

| LastName | FirstName | DateExecuted |
|---|---|---|
| Abed | Joseph | 3/15/2010 |
| Accunzo | Marilyn | 2/18/2010 |
| Albrecht | Frederick | 3/5/2010 |
| Alexander | Robert | 4/14/2010 |
| Allen | Riley | 2/16/2010 |
| Amentola | Ralph | 2/16/2010 |
| Anderson | Larry | 11/2/2009 |
| Areson | Ralph | 2/18/2010 |
| Armstrong | Emestine | 2/18/2010 |
| Arroyo | Ivette | 3/5/2010 |
| Ashmore | Michael | 2/18/2010 |
| Aube | Michel | 2/18/2010 |
| Back | Costalo | 5/5/2010 |
| Bailey | Jeffrey | 3/31/2010 |
| Ballard | Ada | 3/5/2010 |
| Barber | Ruth | 03/10/2010 |
| Barfield | Donald | 2/18/2010 |
| Barneman | Edward | 11/2/2009 |
| Barner | Lillie | 4/21/2010 |
| Barnes | Julia | 3/3/2010 |
| Barry | Emma | 3/26/2010 |
| Bates | Edwin | 11/11/2009 |
| Becker | Donald | 2/18/2010 |
| Becker | Thomas | 11/11/2009 |
| Beersingh | Monica | 11/11/2009 |
| Bell | Shirley | 3/3/2010 |
| Bement | Arnold | 3/10/2010 |
| Benjamin | Shirley | 4/21/2010 |
| Bennett | Brenda | 3/3/2010 |
| Bennett | Harry | 12/17/2009 |
| Bertrand | Mary | 2/18/2010 |
| Bish | Inez | 2/18/2010 |
| Bittar | Samuel | 2/18/2010 |
| Black | Eugene | 3/5/2010 |
| Blackmon | Robert | 2/22/2010 |
| Blaine | William | 4/2/2010 |
| Blanco | Frances | 3/24/2010 |
| Blanton, Jr. | William | 3/25/2010 |
| Block | Edward | 4/5/2010 |
| Boeheim | Frederick | 03/22/2010 |
| Booth | Michael | 2/18/2010 |
| Brewster | Eduardo | 2/22/2010 |
| Bridges | Peggy | 3/23/2010 |
| Brocar | Marianna | 4/5/2010 |
| Brooks | Vanessa | 3/12/2010 |
| Brown | Willie | 4/6/2010 |
| Brown | Joseph | 2/18/2010 |
| Buda | Mario | 03/22/2010 |

1

| | | |
|---|---|---|
| Burden | Edna | 03/17/2010 |
| Burton | David | 5/5/2010 |
| Caldwell | Ronald | 2/18/2010 |
| Campbell | Eugene | 4/21/2010 |
| Campbell | Susan | 2/18/2010 |
| Campbell, Sr. | Michael | 3/12/2010 |
| Carleton | Bruce | 3/3/2010 |
| Carlton | John | 03/22/2010 |
| Carson | Nancy | 4/6/2010 |
| Carter | Hubert | 03/22/2010 |
| Carter | David | 4/8/2010 |
| Carter | Margeline | 03/22/2010 |
| Carter | James | 11/2/2009 |
| Cazad | Thelma | 03/17/2010 |
| Chahoc | Linda | 3/9/2010 |
| Chapman | Benjamin | 2/18/2010 |
| Checksfield | Elizabeth | 12/17/2009 |
| Christie | LaDonna | 3/3/2010 |
| Chupp | James | 11/11/2009 |
| Claro | Adanely | 2/18/2010 |
| Cleare | John | 2/18/2010 |
| Clifton | Nancy | 3/10/2010 |
| Cobb | Jerry | 03/16/2010 |
| Collier-Patrick | Mable | 4/14/2010 |
| Colvin | William | 03/17/2010 |
| Comfort | Peggy | 5/25/2010 |
| Cook | Harry | 5/5/2010 |
| Cooper | Gary | 11/2/2009 |
| Correll | Theresa | 2/18/2010 |
| Cox | Lionel | 3/9/2010 |
| Cunningham | Jeffrey | 2/18/2010 |
| Curd | Laura | 3/5/2010 |
| Curtis | Patricia | 4/14/2010 |
| Dancy | Francis | 3/10/2010 |
| D'Angelo | Bessie | 3/10/2010 |
| Daniel | David | 11/2/2009 |
| Daniels | Clarence | 03/10/2010 |
| Davies | Helen | 11/2/2009 |
| Davis | Curtis | 3/31/2010 |
| Dean | Annie | 3/20/2010 |
| Decker | Glenn | 03/10/2010 |
| DeLoach | Jean | 4/1/2010 |
| DeMarco | Joseph | 11/2/2009 |
| Deritis | Marlyne | 11/11/2009 |
| DiFazio | Reynold | 12/17/2009 |
| Divine | Ronald | 2/16/2010 |
| Dorsey | Roland | 3/5/2010 |
| Dundas | Patricia | 2/18/2010 |
| Durham | Sally | 2/18/2010 |
| Dyals | Eugene | 11/11/2009 |
| Earl | Frederick | 4/7/2010 |
| East | Roy | 3/20/2010 |

| | | |
|---|---|---|
| Eccles | Gloria | 3/31/2010 |
| Ellingwood | Vixon | 2/16/2010 |
| Elmendorf | Robert | 4/2/2010 |
| Evans | David | 3/9/2010 |
| Evans | Lonnie | 3/12/2010 |
| Faust | Marshall | 3/5/2010 |
| Felberg | Norman | 12/30/2009 |
| Fender | Brenda | 11/2/2009 |
| Fifi | Shirley | 4/1/2010 |
| Floyd | Cynthia | 4/7/2010 |
| Folts | Randy | 3/24/2010 |
| Ford | John | 3/5/2010 |
| Foss | Laura | 3/3/2010 |
| Fralix, Sr. | Ronnie | 03/30/2010 |
| Frank | James | 11/11/2009 |
| Fratesi | Basil | 3/5/2010 |
| Friday | Clifford | 03/10/2010 |
| Friedman | Richard | 2/18/2010 |
| Fucci | Joseph | 3/18/2010 |
| Fuller | Marva | 2/16/2010 |
| Gallipeau | Richard | 2/18/2010 |
| Garcia | Myra | 3/24/2010 |
| Gaynor | Milton | 2/18/2010 |
| Geniale | Henry | 03/10/2010 |
| George | William | 3/26/2010 |
| Giampietro | Frank | 2/18/2010 |
| Gibson | Judith | 3/1/2010 |
| Gibson | Charles | 3/5/2010 |
| Gifford | Dale | 3/18/2010 |
| Gilbert | John | 03/30/2010 |
| Giles | Lindell | 3/1/2010 |
| Ginart | Irene | 3/10/2010 |
| Gingold | Allen | 2/18/2010 |
| Glickson | Helen | 2/18/2010 |
| Gonzalez | Maria | 11/11/2009 |
| Gonzalez | Yolanda | 3/31/2010 |
| Gore | Wilda | 3/20/2010 |
| Gould | Peter | 11/11/2009 |
| Grady | Ruth | 3/12/2010 |
| Grantham | Charles | 03/16/2010 |
| Greenblatt | Robert | 3/24/2010 |
| Griffin | Johnny | 5/25/2010 |
| Grimmett | Cecil | 5/25/2010 |
| Grimsley | Betty | 3/5/2010 |
| Gruber | David | 2/18/2010 |
| Guccione | Edwin | 11/2/2009 |
| Gunn | John | 12/17/2009 |
| Hacket | Donald | 3/23/2010 |
| Hagan | James | 3/20/2010 |
| Hansen | Rosemary | 2/18/2010 |
| Harris | Ira | 4/1/2010 |
| Harvan | Joseph | 2/18/2010 |

3

| | | |
|---|---|---|
| Headley | Anna | 3/3/2010 |
| Henderson | Mary | 3/31/2010 |
| Herdman | Charleton | 3/5/2010 |
| Hernandez | Felix | 11/11/2009 |
| Hernandez | Teobaldo | 2/18/2010 |
| Hernandez | Antonia | 3/29/2010 |
| Hickson | Yvonne | 11/2/2009 |
| Hiers | Evelyn | 03/16/2010 |
| Hill | Mabel | 3/3/2010 |
| Hodges | Ernestine | 3/20/2010 |
| Holcomb | Moses | 2/18/2010 |
| Hollis | Sean | 3/3/2010 |
| Holmes | Charles | 3/3/2010 |
| Holmes | Alease | 3/3/2010 |
| Holt | Mary | 5/25/2010 |
| Hopkins | Martin | 3/9/2010 |
| Horrigan | Terrance | 03/10/2010 |
| Hotaling | William | 11/11/2009 |
| Howard | Joan | 11/11/2009 |
| Huckleberry | Gene | 3/5/2010 |
| Hughley | Kathy | 3/20/2010 |
| Hunt | James | 3/5/2010 |
| Ilardi | Evelyn | 3/12/2010 |
| Illes | Katalin | 3/20/2010 |
| Ingleton | Robert | 3/9/2010 |
| Ingram | Elizabeth | 3/18/2010 |
| Ingram | Irma | 2/18/2010 |
| James | Dorothy | 3/23/2010 |
| Jamiel | James | 11/2/2009 |
| Jarczynski | Jane | 11/2/2009 |
| Jateff | Nicholas | 2/18/2010 |
| Jenkins | Voncille | 03/22/2010 |
| Jimenez | Iliana | 2/18/2010 |
| Johnson | Jawara | 11/2/2009 |
| Jones | Ronnie | 3/15/2010 |
| Jones | George | 3/23/2010 |
| Kalck | Kathleen | 3/23/2010 |
| Katz | Phyllis | 2/18/2010 |
| Kellogg | Rose | 3/5/2010 |
| Kelly | Rose | 3/20/2010 |
| Kennedy | Elizabeth | 3/3/2010 |
| Kenney | Albert | 3/3/2010 |
| Kenny | Matthew | 11/11/2009 |
| Kent | Alvin | 03/17/2010 |
| Key | Jeffery | 5/25/2010 |
| Khan | Bibi | 03/17/2010 |
| Kilgore | James | 03/10/2010 |
| Kingston | Francis | 3/5/2010 |
| Kirksey | William | 3/23/2010 |
| Klang | Charles | 11/11/2009 |
| Klein | Melvyn | 3/12/2010 |
| Knight | Allen | 11/2/2009 |

4

| | | |
|---|---|---|
| Koller | Leonides | 03/16/2010 |
| Kool | Ron | 11/11/2009 |
| Kostiuk | Garry | 11/2/2009 |
| Lackey | Walter | 2/18/2010 |
| Lacroix | Luc | 11/11/2009 |
| Larmore | Rebecca | 03/10/2010 |
| Larson | Jim | 5/25/2010 |
| Lawrence | Robertha | 3/23/2010 |
| LeBaron | Kim | 3/10/2010 |
| Lemon | Marcus | 2/18/2010 |
| Leonard | William | 2/18/2010 |
| Lewin, | Elizabeth | 11/2/2009 |
| Lewis | George | 2/18/2010 |
| Lintz | Herbert | 3/18/2010 |
| Longo | Fiore | 2/16/2010 |
| Lopez-Rivera | Jose | 11/11/2009 |
| Lord | James | 3/24/2010 |
| Luczynski | June | 2/18/2010 |
| Lukatz | Robert | 2/18/2010 |
| Manning | Mary | 3/3/2010 |
| Marcus | Barbara | 2/18/2010 |
| Marten | Sylvia | 03/16/2010 |
| Martin | Alvin | 2/18/2010 |
| Martin | Aubrey | 3/12/2010 |
| Martin | Guy | 03/22/2010 |
| Martorano | Matthew | 2/18/2010 |
| Mathews | Juanita | 11/11/2009 |
| Matthews | Charles | 2/18/2010 |
| Mattos | Julio | 11/2/2009 |
| McCall | John | 11/2/2009 |
| McCoy | Thomas | 2/18/2010 |
| McCray | Alton | 3/3/2010 |
| McDaniel | Joseph | 3/12/2010 |
| McDavid | Eligie | 3/18/2010 |
| McDonnell | Gertrude | 3/5/2010 |
| McGill | Del | 4/1/2010 |
| McInerney | Margaret | 3/5/2010 |
| McNair | Jeffrey | 2/18/2010 |
| Medina | Efrain | 4/7/2010 |
| Meszaros | Patricia | 4/6/2010 |
| Migliaccio | Carl | 03/16/2010 |
| Mihan | Beatrice | 3/1/2010 |
| Milan | Edward | 3/3/2010 |
| Miller | Barbara | 3/9/2010 |
| Miller, Jr. | Curtis | 3/12/2010 |
| Mills | Wesley | 03/16/2010 |
| Mitchell | Mart | 3/20/2010 |
| Mitchell, Jr. | Leroy | 3/18/2010 |
| Mixon | William | 3/3/2010 |
| Moeller | Albert | 11/11/2009 |
| Mogul | Max | 12/17/2009 |
| Morales | Gilda | 03/17/2010 |

| | | |
|---|---|---|
| Morgan | Charlie | 3/31/2010 |
| Mullett | James | 4/5/2010 |
| Nix | Richard | 2/18/2010 |
| Norell | Sheila | 3/3/2010 |
| Norris | Ester | 3/3/2010 |
| O'Daly | Lawrence | 3/3/2010 |
| Oliver | Jacqueline | 2/18/2010 |
| Olson | Richard | 2/16/2010 |
| Osborne | Shirley | 2/16/2010 |
| Oswald | Robert | 3/20/2010 |
| Pall | Anthony | 11/2/2009 |
| Palumbo | John | 3/10/2010 |
| Papcke | Charles | 2/18/2010 |
| Parker | John | 3/5/2010 |
| Parrish | Rosa | 2/18/2010 |
| Parson | Betty | 2/18/2010 |
| Patel | Rajendra | 11/11/2009 |
| Paul | Kay | 11/2/2009 |
| Pearson | Larry | 2/16/2010 |
| Pelfrey | Charles | 3/18/2010 |
| Peltz | Albert | 11/2/2009 |
| Piacenza | Michael | 3/3/2010 |
| Pierce | Jay | 11/11/2009 |
| Place | Barbara | 4/1/2010 |
| Plotkin | Ira | 2/18/2010 |
| Poeder | Donald | 4/7/2010 |
| Poling | Kevin | 03/10/2010 |
| Pomles | Charles | 3/18/2010 |
| Portelli | Emma | 11/11/2009 |
| Potter | Jerry | 3/23/2010 |
| Preston | Jo Ann | 3/5/2010 |
| Proctor | James | 3/18/2010 |
| Pruitt | Benjamin | 2/16/2010 |
| Puerto | Elmo | 2/18/2010 |
| Putnam | Frank | 11/11/2009 |
| Rabin | Richard | 5/25/2010 |
| Ramoutar | Gloria | 3/1/2010 |
| Ray | Dianne | 2/18/2010 |
| Reeves | Albert | 3/5/2010 |
| Rennie | Alexander | 03/16/2010 |
| Reynolds | Dorothy | 2/18/2010 |
| Richburg | Martha | 3/12/2010 |
| Ringle | Thomas | 2/16/2010 |
| Rivera | Antonio | 4/14/2010 |
| Rizzo | Salvatore | 3/26/2010 |
| Roark | Charles | 2/18/2010 |
| Roberson | Janis | 3/25/2010 |
| Roberts | Viola | 03/17/2010 |
| Roberts | Freda | 4/14/2010 |
| Roberts | Courtland | 3/3/2010 |
| Rogers | Eva | 3/25/2010 |
| Rosenberg | Gladys | 11/11/2009 |

| | | |
|---|---|---|
| Rothenberg | Jay | 2/16/2010 |
| Rotterdam | Howard | 3/3/2010 |
| Russo | Salvatore | 5/5/2010 |
| Sands | David | 3/10/2010 |
| Santangelo | Irene | 3/3/2010 |
| Schell | Joseph | 11/2/2009 |
| Schumacher | Lael | 3/3/2010 |
| Scott | Helen | 3/23/2010 |
| Scott | Ruby Lee | 2/18/2010 |
| Scott | Pauline | 3/25/2010 |
| Segal | Cheryl | 3/25/2010 |
| Settle | Robert | 3/20/2010 |
| Sheets | Karen | 03/10/2010 |
| Silcox | Jimmy | 2/18/2010 |
| Singleton | Yvonne | 3/3/2010 |
| Sirmons | Wylene | 2/18/2010 |
| Sisk | Joyce | 2/18/2010 |
| Skarakis | Stratos | 11/11/2009 |
| Slater | Bolman | 3/5/2010 |
| Smith | Elizabeth | 3/5/2010 |
| Smith | Reshea | 03/10/2010 |
| Smith | Mickey | 4/14/2010 |
| Snable | Sharon | 2/18/2010 |
| Solomon | Harvey | 11/2/2009 |
| Soost | Sheryl | 4/21/2010 |
| Soto | Rose | 11/2/2009 |
| Spencer | Robert | 03/10/2010 |
| Spiller | Ralph | 3/31/2010 |
| Stachel | Charles | 3/10/2010 |
| Stephens | Rosa Mae | 11/11/2009 |
| Stepp | James | 03/10/2010 |
| Sterling | Iris | 2/18/2010 |
| Stewart, Sr. | Andrew | 3/25/2010 |
| Stoor | Bryan | 11/2/2009 |
| Strickland | Oliver | 3/9/2010 |
| Strickland, Jr. | Alfred | 3/15/2010 |
| Stringer | Enadeane | 2/18/2010 |
| Sullivan | Eugene | 11/2/2009 |
| Sweeney | Robert | 2/16/2010 |
| Swope | Fred | 3/5/2010 |
| Swope | William | 3/5/2010 |
| Tatum | Carol | 4/7/2010 |
| Teresi | Mariano | 3/18/2010 |
| Thompson | Yvonne | 11/2/2009 |
| Thompson | Leo | 2/18/2010 |
| Thompson | Douglas | 2/18/2010 |
| Totarem | Jairam | 3/3/2010 |
| Touchstone | Robert | 5/25/2010 |
| Ulmer | Louise | 03/10/2010 |
| Vaitkus | Valen | 3/12/2010 |
| VanLandingham | Brenda | 03/10/2010 |

| | | |
|---|---|---|
| Vari | Mario | 11/11/2009 |
| Vaughan | Grace | 03/17/2010 |
| Vazquez | Angel | 2/16/2010 |
| Villarruel | Cary | 2/16/2010 |
| Villines | Randy | 2/18/2010 |
| Vogel | Judith | 5/5/2010 |
| Wade | Rosa | 3/10/2010 |
| Walker | Mary | 3/12/2010 |
| Wallace | Washington | 2/18/2010 |
| Wallace | William | 3/5/2010 |
| Wanser | Alfred | 2/18/2010 |
| Warner | Barbara | 4/21/2010 |
| Warren | John | 3/3/2010 |
| Warwick | Charles | 3/5/2010 |
| Washington | Eunice | 2/18/2010 |
| Washington | Lena | 3/3/2010 |
| Wayne | Geraldine | 11/25/2009 |
| White | Walton | 3/20/2010 |
| Whittaker | Karen | 2/18/2010 |
| Wilbur | David | 4/21/2010 |
| Wilhelm | Joseph | 03/17/2010 |
| Wiliams | Freddie | 4/14/2010 |
| Williams | Donald | 2/18/2010 |
| Wills | Carmen | 2/18/2010 |
| Willson | Clifford | 03/10/2010 |
| Wilson | Mae | 03/10/2010 |
| Wood | Richard | 11/2/2009 |
| Wright | Leonard | 03/30/2010 |
| Young | Elma | 11/11/2009 |
| Zarrelli | Jennie | 3/10/2010 |
| Zuccaro | Dayton | 3/18/2010 |